**IN THE COURT OF APPEALS OF IOWA**

No. 22-1799
Filed January 25, 2023

**IN THE INTEREST OF E.B. and A.B.,**
**Minor Children,**

**A.H., Mother,**
        Appellant,

**E.B., Father,**
        Appellant.
_____

Appeal from the Iowa District Court for Polk County, Lynn C.H. Poschner,

District Associate Judge.

A mother and father appeal the termination of their respective parental

rights. **AFFIRMED ON BOTH APPEALS.**

Donna M. Schauer of Schauer Law Office, Adel, for appellant mother.

Barbara Durden Davis, West Des Moines, for appellant father.

Brenna Bird, Attorney General, and Ellen Ramsey-Kacena (until

withdrawal) and Mary A. Triick, Assistant Attorneys General, for appellee State.

Lori Bullock of Newkirk Zwagerman, P.L.C., Des Moines, attorney and

guardian ad litem for minor children.

Considered by Tabor, P.J., and Schumacher and Chicchelly, JJ.

**SCHUMACHER, Judge.**

A mother and father appeal the termination of their parental rights. They claim the State did not establish a ground for termination. They also claim termination is not in the children's best interests, in part due to the close their respective parent-child bonds. We find the State established a ground for termination by clear and convincing evidence as to both parents. We also find termination is in the best interests of the children. Finally, the parent-child bonds are insufficient to prevent termination. We affirm on both appeals.

## I.      Background Facts & Proceedings

This family came to the attention of the Iowa Department of Health and Human Services (DHHS) in January 2020 due to, as the juvenile court noted, "untreated mental illness, violence, and general chaos." There were allegations of physical violence between the children. There were also concerns of domestic violence—the children reported fighting and physical violence between their parents. The mother threatened to kill herself in front of the children, as did the father's paramour at the time.[1] The two oldest children—B.B., age thirteen at the time of the termination hearing, and A.B., age ten—had mental-health and behavioral concerns.[2] Both had homicidal and suicidal ideation. The youngest child—E.B., age five—exhibited similar concerns as the older children. A.B. and E.B. attacked the mother, both physically and verbally.

School employees articulated concerns for the children's hygiene. School staff consistently had to change the children's clothing. It was later learned that

---

[1] The paramour is not a party to these proceedings.
[2] B.B., the oldest child, is not subject to the termination order.

the two older children had not been to the dentist since 2016; E.B. had never been to the dentist. DHHS offered voluntary services.

In May and June, DHHS conducted two more investigations. The investigations focused on the father and his paramour's drug use—the father tested positive for methamphetamine.[3] The father's paramour jumped out of a second story window in front of the children when she became overwhelmed. A safety plan was put in place in which the father was not allowed unsupervised contact with the children. But the parents violated that safety plan

The State filed a petition alleging the children to be in need of assistance (CINA) in July. On August 31, the children were adjudicated CINA pursuant to Iowa Code section 232.2(6)(c)(2) (2020). The children were formally removed from the father, who was prohibited from contact with the children. Around that time, the father reported he had ended his relationship with his paramour and planned to resume his relationship with the mother.

During a February 2021 hearing, plans were established to begin reintegration of the father into the home. But those plans were never implemented as additional concerns surfaced. On March 10, police were called to the home. The mother and father had been fighting in front of the children, including the father pushing the mother. DHHS employees learned that the mother was not preventing the father from contacting the children. This included allowing the father unsupervised access to the children.

---

[3] The father has not tested positive for drugs since this time.

There were also concerns related to B.B's report that the father had broken the child's arm in 2019 when B.B. tried to intervene in parental fighting. Both parents instructed the child to lie about how he broke his arm. As a result, the children were also removed from the mother's custody. The father moved back in with the mother after the children's removal. They continued to live together at the time of the termination hearing.

The children were placed with their maternal grandmother. While there, the mother was offered unlimited supervised visits. She rarely went, however, because the father was not offered similar visitation. The children were moved again in January 2022 because of violence at the grandmother's home. B.B. was placed with his paternal uncle. E.B. and A.B. moved into a foster home together. They were moved to a second foster home in February. They moved yet again in May to their third foster family, where they remain. Their behavioral problems have improved, although outbursts still happen, particularly after visits with the parents. The foster family is willing to adopt the two younger children.

The parents have both engaged in individual therapy. The focus of the father's therapy has concerned controlling his anger. The mother's focus is on expressing her emotions, advocating for herself, and establishing healthy boundaries. An evaluation of the mother indicated she has a co-dependent personality, a major concern for DHHS considering her dependency on the father. The mother obtained a domestic violence advocate. The father completed the "Caring Dads" course. The parents utilized the Safe Care course.

Both parents have intellectual and developmental disabilities (IDD). The DHHS caseworker and Family Centered Services (FCS) worker testified they

addressed those issues by speaking slowly and repeating themselves. The DHHS caseworker expressed that she had hoped the parents' individual therapist would refer the parents to programs and services that were needed based off of the parents' cognitive difficulties. The parents obtained family counseling in March 2022. That therapist expressed concerns that the parent's needs as individuals with IDD were not being addressed. Yet neither parent moved for reasonable efforts related to their intellectual disabilities beyond what was being provided prior to the termination hearing.[4]

Visitation has remained fully supervised during this case. While parenting is generally appropriate, neither parent can deescalate A.B. or E.B. when they exhibit problematic behavior. The children particularly target the mother, cursing at her and hitting her. The foster family reports that the children's problematic behavior is more limited when in their care and they are able to calm the children down.

The State petitioned to terminate both parent's parental rights to all three children on April 18. The hearing was held over two days in early August. The mother testified that she would be willing to separate from the father to regain her children. She denied any physical abuse by the father against herself or the children except for the incident in March 2021 that led to the children's removal. The father acknowledged he had committed domestic violence against the mother, and acknowledged shoving B.B. once. The father expressed an unwillingness to

---

[4] To the extent the parents claim DHHS failed to make reasonable efforts in relation to their intellectual disabilities, those claims are not preserved for our review. *See In re T.S.*, 868 N.W.2d 425, 442 (Iowa 2015).

leave the mother, believing it would not help either one of them regain custody and that the children were better off in both parents' care. The parents struggled to understand the questions posed to them and often changed their answers, making their testimony difficult to follow.[5] DHHS explained that the primary concern was the unacknowledged and therefore unresolved patterns of domestic violence and the parents' inability to deescalate problematic behavior by the children.

The father moved to reopen the record following the hearing. The court denied the motion as to E.B. and A.B, but granted it as to B.B., allowing B.B. to speak with the court. The court terminated both parents rights to E.B. and A.B. pursuant to Iowa Code section 232.116(1)(f) (2022). Both parents appeal.

## II.    Standard of Review

We review the termination of parental rights de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). We first examine if a statutory ground exists for termination under Iowa Code section 232.116(1). *Id.* at 39. We then consider if termination is in the children's best interests. *Id.* Finally, we must determine whether termination should be prevented by an exception found in section 232.116(3). *Id.* Our "first and governing consideration . . . is the best interests of the child." Iowa R. App. P. 6.904(3)(o).

---

[5] The parents' family counselor explained in her report to the court, "Both [the mother] and [the father] admitted to [the therapist] that they will agree or present as though they understand to avoid looking bad or 'stupid.'"

**III.    Discussion**

Both parents contend the State failed to prove a ground for termination. They also claim termination is not in the children's best interests and that their respective close parent-child bonds should prevent termination.

**A.    Statutory Ground for Termination**

The juvenile court terminated both parent's parental rights pursuant to Iowa Code section 232.116(1)(f).[6] The parents only contest the fourth element, whether the children can be returned at the present time.  "At the present time" means at the time of the termination hearing.  *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010).  Alternatively, both parents ask for a six-month extension.  *See* Iowa Code section 232.104.

After our de novo review, we conclude the State established by clear and convincing evidence the children cannot be returned to either parent at the present time or in six-months.[7]  First, while the father has made some progress addressing

---

[6] That section allows a court to terminate parental rights if it finds:
> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

[7] We have previously explained:
> Under Iowa Code section 232.104(2)(b), a court may refrain from terminating a parent-child relationship and continue the current placement of the child for an additional six months if it determines "that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period."  In order to grant such an extension, the court must be able to "enumerate the

his anger and domestic violence, his therapist described that progress as "mild."[8] That therapist highlighted his remaining concerns as (1) the father's tendency to hide the full truth on issues and (2) his struggles translating what he learns in therapy into real-world changes. The therapist's concerns over the honesty of the father is concerning, as it indicates therapy might not be addressing his domestic violence adequately. And therapy is of little value, at least in terms of returning the children to his custody, if the father cannot implement changes in his daily life.

The mother has failed to acknowledge the father's past abuse against her or her children. That is the case despite the father offering some limited concessions on the issue—he only admitted to shoving B.B. once and denies breaking his arm, but he does admit to prior verbal and physical abuse against the mother. Despite clear prohibitions on the father contacting the children, he regularly did so from August 2020 through March 2021, with the mother's acquiescence. The mother testified that she might be willing to end her relationship with the father, but it is not her preference to do so. Given the history of this case, it is unlikely she will separate from him; the father testified at trial that he is against it. *See In re B.H.A.,* 938 N.W.2d 227, 233 (Iowa 2020) (citation omitted) (explaining that past performance is indicative of future parenting). The mother lacks the protective capacity to prevent the father from harming the

---

specific factors, conditions, or expected behavioral changes" providing the basis for its decision. Iowa Code § 232.104(2)(b).
*In re S.J.,* No. 20-0214, 2020 WL 1881119, at *1 (Iowa Ct. App. Apr. 15, 2020).
[8] We note that while the family therapist expressed the belief that the mother's family was a greater threat to the mother than the father, that opinion was premised on incomplete information. The therapist lacked access to the DHHS reports documenting the abuse, and the father admitted at the termination hearing that he did not inform the therapist of prior abuse.

children.  And we note the juvenile court previously granted a six-month extension as part of the permanency order filed August 25, 2021.

Finally, neither parent has learned how to address their children's problematic, and sometimes violent, behaviors.  As recently as August 3, in between the two days of the termination hearing, E.B. had a melt down and locked himself in a room during a visit.  The parents were unable to deescalate the child and the visit was ended early.  A.B. and E.B. are frequently verbally and physically abusive towards their mother.  Those problematic behaviors extend outside the visits, including suicidal and homicidal threats.  The foster family has indicated the behaviors are worse when the children return from visits, although the foster parents are able to deescalate the situations.

The parent's unaddressed and unresolved domestic abuse, as well as their inability to deescalate and prevent their children's behavioral problems, presents a danger to children if they were returned to parental custody.  The children could not be returned to the custody of either parent at the time of the termination hearing or with a six-month extension.

## B.    Best Interests of the Children

The parents contend termination is not in the children's best interests. When weighing the best interest of a child, we consider "the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child."  Iowa Code § 232.116(2).

Termination is in both of the children's best interests.  As discussed above, the parents cannot deescalate the children when they exhibit problematic behavior.

As the children grow older and bigger, that behavior will pose greater dangers to themselves and others. Additionally, there remains unacknowledged and unaddressed issues of domestic violence between the parents. And the father's work on his anger is incomplete, posing a danger to the children.

We also note that the children have been removed from the father for over two years, and from the mother for about a year-and-a-half. The children need permanency. As the foster family indicated, their behavior worsens after visits. This behavior is being addressed by the foster family, who are willing to adopt. Termination is in the children's best interests.

## C.     Close Parent-Child Bond

The parents assert their respective close bonds with the children should preclude termination. *See* Iowa Code § 232.116(3)(c). The exceptions to termination, which includes instances of a strong parent-child bond, "are permissive, not mandatory." *In re A.S.*, 906 N.W.2d 467, 475 (Iowa 2018) (citation omitted). The parent asserting the exception bears the burden of establishing its applicability. *Id.* at 476.

It was acknowledged at trial that both parents share a bond with their children. But this record is insufficient to establish that termination would be detrimental to the children. *See* Iowa Code § 232.116(3)(c). Despite the parent-child bonds, the children's best interests are furthered by termination of the mother and father's parental rights to provide permanency. We, like the juvenile court, decline to apply an exception found in section 232.116(3).

**AFFIRMED ON BOTH APPEALS.**